No. 9659.

## JEFFERSONVILLE, MADISON AND INDIANAPOLIS RAILROAD COMPANY ET AL. *v.* BARBOUR ET AL.

CONVEYANCE.— *Condition Subsequent.*— *Construction.*— A condition subsequent is not favored, and is therefore very strictly construed.

SAME.—*Forfeiture.*—A conveyance of lands recited that it was made "expressly for the use and purpose of depot grounds for the M. & I. railroad," and that if there should be a failure to erect buildings and occupy it for that purpose, the land should revert to the grantors. After the erection of buildings and use of the land for the purpose specified for thirty-three years, it ceased to be so used, and a new location was made. *Held,* that the condition was performed, and there was no forfeiture.

From the Bartholomew Circuit Court.

*S. Stansifer* and *W. D. Stansifer,* for appellants.

*J. B. Reeves* and *N. R. Keyes,* for appellees.

HAMMOND, J.—The appellees brought this action against the appellants to quiet title to a certain described tract of ground. It is averred in the complaint that on April 19th, 1841, certain parties under whom the appellees, as heirs and devisees, claim title, conveyed by deed, subject to certain conditions, the tract of ground in controversy to the State of Indiana, for the use of the Madison and Indianapolis railroad. A copy of the deed, filed with the complaint, reads as follows:

"This indenture, made this nineteenth day of April, in the year of our Lord one thousand, eight hundred and forty-one, between John M. Gwin and Mary Ann, his wife, of the county of Bartholomew; Lucius Barbour and Harriet L. Barbour,

his wife, of the city of Madison; Harry Case, Edward Case, Volney G. Barbour, of the State of Connecticut, by said Lucius Barbour, their attorney in fact, and Edward M. Beckwith, formerly of Indiana, by Courtland Cushing, of the city of Madison, aforesaid, his attorney in fact, of the first part, and the State of Indiana, of the second part, witnesseth that said parties of the first part, for and in consideration of the sum of five dollars, lawful money of the United States, to them in hand paid by said parties of the second part (the receipt whereof is hereby acknowledged) have granted, bargained and sold, aliened, released, conveyed and confirmed, and by these presents do grant, bargain, sell, aliene, release, convey and confirm unto said party of the second part, their heirs and assigns forever, all and singular, the following described tract or parcel of ground lying and being adjoining the town of Columbus, county of Bartholomew and State of Indiana, to wit :" (Here follows description of land.) " The above ground is deeded to the State of Indiana expressly for the use and purpose of depot grounds for the Madison and Indianapolis railroad. Now, therefore, be it known, that in case the State of Indiana shall fail to erect buildings and occupy said ground for the use and purpose above mentioned, then and in that case the above specified ground shall revert back to the donors. All the fencing and buildings that may be on said grounds are reserved and not intended to be sold, together with all and singular the privileges and appurtenances to the same belonging or in any wise appertaining, and the rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part in, upon and to said premises, and every part thereof, to have and to hold the premises hereby bargained and sold, or meant or intended so to be, with the appurtenances, to said party of the second part, his heirs and assigns, to the only proper use and behoof of said party of the second part, their heirs and assigns forever, and the said parties of the first part, for themselves, their heirs, executors and administrators, do cov-

enant, promise and agree to and with said party of the second part, their heirs, executors, administrators and assigns, that they are the true and lawful owners of the said premises hereby granted, and have good right, full power and lawful authority to sell and convey the same in manner and form aforesaid; and further, that they, the said parties of the first part, for themselves, their heirs, executors and administrators, will warrant and forever defend the aforesaid premises, with the appurtenances and every part thereof unto the said party of the second part, their heirs and assigns, against all person or persons whomsoever, lawfully claiming or to claim the same by, from or under them, or any of them, or by, from or under any other person or persons whomsoever.

"In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year above written."

The deed was signed by the grantors, acknowledged and recorded. Proper averments are made, showing that the appellants have succeeded to the rights of the State and of the Madison and Indianapolis railroad. The complaint charges that the railroad for whose use the deed was made took possession of the lot under the deed and erected a depot thereon, which remained until 1874, "at or about which time said company ceased to maintain any depot building thereon, and since said time said ground has never been used for depot purposes, and other and different grounds have been used for a depot for said company in Columbus, Indiana." The appellees aver that before bringing this action they demanded of the appellants entry and possession of said premises, which the appellants refused to give.

The appellants' demurrer to the complaint was overruled. They then answered in eight paragraphs, and also filed a counter-claim. To each paragraph of the answer and to the counter-claim the appellees' demurrer was filed and sustained. These several rulings were excepted to by the appellants, and are assigned as error in this court.

The appellees claim that, under the condition in the deed, it was the duty of the railroad company not only to erect buildings upon, but perpetually to occupy, the lot described in the deed as depot grounds; and that the failure to do this since 1874 entitled the appellees to re-enter for condition broken. The appellants, upon the other hand, deny the perpetuity of the condition. They claim that the erection of the buildings and the occupancy of the lot for depot purposes, in a reasonable time after the execution of the deed, and the continued possession thereof for such purposes for thirty years, avoided the condition and made the estate absolute.

Conditions subsequent are not favored in law. They are strictly construed. *Hunt* v. *Beeson,* 18 Ind. 380. The authorities are unanimous in holding that conditions subsequent require unusual strictness of construction. "A court of equity," says Chancellor Kent, " will never lend its *aid* to divest an estate for the breach of a condition subsequent. The cases, on the contrary, are full of discussions, how far chancery can *relieve* against subsequent conditions." 4 Kent Com. 130.

The rule of strict construction applicable to the case at bar does not require us to hold that the railroad for all time to come was bound to use the premises for depot purposes. No time was fixed in which it was to erect the buildings and occupy the lot as depot grounds. In such case the law required the performance of these acts within a reasonable time. The complaint shows that the railroad complied with this requirement. It took possession at once under the deed, erected the buildings and occupied the ground for depot purposes for thirty years. This, we think, was a substantial compliance with the condition of the deed. Had the grantors intended that the lot should be occupied by the railroad for all time to come for depot purposes, words suitable to express such intention would have been employed. General rules of interpretation require a deed to be construed most strongly against the grantor. Since no time was fixed for the occupancy of the lot to continue for depot purposes, we think that the par-

ties must have intended that it should be for a reasonable time. It may be presumed that when the conveyance was made the grantors owned other contiguous real estate, the value of which they supposed would be increased by the occupancy of the lot conveyed as depot grounds. This action was brought nearly thirty-eight years after the execution of the deed. There is no averment in the complaint that the appellees have been damaged by the failure of the railroad, since 1874, to use the premises for depot purposes. It is not, under the circumstances, unreasonable to suppose that the grantors received, in the occupancy of the lot as depot grounds for thirty years, all the benefits and advantages which they anticipated when they made the conveyance.

In determining whether a condition subsequent in a deed has been broken or not, construction is required in nearly every case. But little assistance can be had from examining other cases, except to ascertain rules for interpretation. Each case differs so widely from all others that even rules of construction can not be wholly depended upon. The application of good sense and sound equity are as much to be relied upon as subtle and artificial rules of construction. The point, of course, to be arrived at in every case, is to ascertain the intention of the parties. And we may suppose in this case, from the language of the deed and the surrounding circumstances of the transaction, so far as they are disclosed in the complaint, that the grantors' object in the conveyance was satisfied in the occupancy of the premises by the railroad, for depot purposes, for a period of time nearly equal in duration to the average of human life.

In *Hunt* v. *Beeson, supra,* Hunt had donated to Pugh a lot for the purpose of erecting a tanyard on it. A tanyard was erected and maintained twenty-four years on the lot, and then discontinued. An action for forfeiture of the premises was brought; but this court held that the condition had been complied with, and that the estate in the grantee had become absolute. The court, in that case, says: "Thus for twenty-four

years was the property used for the purposes of a tanyard. It may reasonably be supposed that the donor, having in view the future growth, business and prosperity of the town, expected that the business of tanning would be carried on upon the lot after the erection of the tanyard, for an indefinite length of time. This expectation, it seems to us, has been fully met, and the objects and purposes of the donation fully carried out. We do not think that it can be held that a failure to further use the lot as a tanyard lot, or an appropriation of it to other purposes, can work a forfeiture of the estate."

The case of *Mead* v. *Ballard*, 7 Wal. 290, was a conveyance containing a much stronger condition than the one under consideration. The deed was made by Mead's ancestor to Amos Lawrence. The condition was in these words: " Said land being conveyed upon the express understanding and con- *dition* that the Lawrence Institute of Wisconsin, chartered by the Legislature of said Territory, *shall be permanently located upon said lands,* and *on failure of such location being made on or before the 7th day of September,* 1848, and on repayment of the purchase-money without interest, the said land shall revert to and become the property of said grantors." The board of trustees, on August 9th, 1848, passed a resolution locating the institute upon the lot described in the deed. Contracts were made and buildings completed by November, 1849, at a cost of $8,000. The buildings were destroyed by fire in 1857 and never rebuilt, and those, in the mean time erected on another lot, were afterwards used for the institute. It was held in the action by Mead to recover for condition broken, that the institute had so complied with the terms of the deed as to avoid the condition and make the conveyance absolute.

These cases are strongly in point, and we think fully sustain our position that there was, in the case before us, a compliance with the condition of the deed sufficient to prevent a forfeiture. Indeed, it is not necessary for us in this case, in holding that the condition of the deed has been complied with,

to go to the extent of the doctrine anounced in *Mead* v. *Ballard, supra.* The case at bar is to be distinguished from *Indianapolis, etc., R. W. Co.* v. *Hood,* 66 Ind. 580. In that case the consideration of the conveyance was the " permanent location and construction of the depot " of the grantee upon the lots conveyed. It was also stated in the deed in that case, that the lots were conveyed " for a site for the depot " of the grantee, and the words of the *habendum* were, "to have and to hold the premises aforesaid, with the appurtenances, to the said party of the second part, for the purposes aforesaid." The *purposes* were a site for a depot, and the permanent location and construction of a depot on the grounds conveyed ; in other words, from the language used in the deed, it was clearly the intention of the parties in that case that the grantee's depot on the lots should be continued for all time, or that the lots should revert to the grantors. The condition of the grant in the present case was in effect that the grantee should locate and occupy the lots as depot grounds. No time was mentioned, and the language does not, strictly construed, mean perpetuity. We think thirty years' occupancy of the lots as depot grounds was a substantial compliance with the condition.

For the reasons which we have given for holding the appellees' complaint bad, we think that the appellants' counterclaim was good on demurrer, and that the court below erred in sustaining a demurrer to it.

We feel compelled to hold that the appellees' complaint was insufficient, and that the demurrer to it should have been sustained. This makes it unnecessary to examine other alleged errors.

The judgment of the court below is reversed, at the appellees' costs, and cause remanded, with instructions to sustain the appellants' demurrer to the appellees' complaint, and to overrule the appellees' demurrer to the appellants' counterclaim, and for further proceedings not inconsistent with this opinion.