Sumner *et al. v.* Darnell.

Filed April 8, 1891.

---

No. 14,651.

## SUMNER ET AL. *v.* DARNELL.

DEED.—*Condition Subsequent.—Sufficiency to Defeat Estate.—Aiding.*—A condition subsequent that will defeat an estate created by a deed must be fairly expressed in the deed itself. The words used must create the condition. The court will not supply it, if the parties fail to express it.

SAME.—*Condition must be Clearly Stated.*—A condition may be created by any words which show clear, unmistakable intention on the part of a grantor to create an estate, or condition, regard being had to the whole of the deed in which they occur. The word "condition" need not be used, but words importing a condition must be used, or plainly inferred from the instrument and the existing facts.

SAME.—*County Seat.—Removal.—Reversion of Land Conveyed to Secure Location of.*—In 1816 the Legislature moved the county seat of Wayne county from Salisbury to Centreville, where it remained until 1874, when it was removed to Richmond. In 1819 the owner of certain land situated in Centreville, in consideration of the seat of justice having been permanently established in Centreville, and for no other consideration, conveyed it to A, B, and C, by name, the commissioners of the county, "and their successors in office, for the use of said county."

*Held,* that this was, in effect, a conveyance to the county, and not to them as trustees for the county ; that the grantor had received a sufficient consideration for the conveyance from the presumed benefit he derived from the location of the county seat at Centreville from 1819 to 1874, and that the land conveyed did not revert to the grantor or his heirs when the county-seat was removed to Richmond.

From the Wayne Circuit Court.

*J. B. Julian* and *J. F. Julian,* for appellants.

*H. C. Fox* and *J. F. Robbins,* for appellee.

MILLER, J.—This was an action by the appellants against the appellee to recover certain real estate in Centreville, Wayne county. The complaint was in four paragraphs. A demurrer was sustained to the second paragraph, and the cause was put at issue by an answer in denial.

The errors assigned in this court relate only to the overruling of a motion made by the appellants for a new trial, and to exceptions to the conclusions of law upon the special findings of fact.

The motion for a new trial was predicated upon the alleged insufficiency of the evidence to sustain the finding. We have read the evidence carefully and find that it fully and without conflict sustains the finding of facts made by the court.

The special finding, omitting the description of real estate, is as follows, viz.:

" Having been requested by the plaintiffs in said cause to make a special finding of facts herein, and conclusions of law thereon, now find that William Sumner was a resident of Centreville, Wayne county, Indiana, from the year 1813 to the year 1840, at which last named date he removed to Hamilton county, Indiana, where he died, intestate, in the year 1868 ; that he left surviving him, as his sole heirs, four children, the plaintiffs in this suit, and Thomas Sumner, who died in 1883, leaving surviving him, —— Sumner, his wife ; that between the years 1813 and 1820 the said William Sumner was the owner in fee simple of —— acres of real estate in the town of Centreville, and in the vicinity thereof, and was interested in the development of the town ; that prior to the year 1816 the county-seat of said Wayne county was fixed at Salisbury, and subsequently, by an act of the General Assembly of the State of Indiana, approved December 21st, 1816, it was enacted that from and after the 1st day of August, 1817, the seat of justice in and for said county should be removed to and permanently fixed in the town of Centreville, in said county, and on the 1st day of August, 1817, said seat of jus-

tice was, pursuant to said act, removed to said town of Centreville; that afterwards, to wit, on the 18th day of May, 1819, the said William Sumner, being the owner of the following real estate, to wit: ( * * * ), did, in consideration of the seat of justice having been permanently established in the town of Centreville, within and for said county, and for no other consideration, execute to Thomas J. Worman, Enos Grave and Beah Butler, the commissioners of said county, and their successors in office, for the use of said county forever, a warranty deed for the same; that said deed was duly recorded on the 18th day of May, 1819, in the recorder's office of said Wayne county, Indiana, in deed record " B," page 140; that, on the —— day of August, 1820, the new court-house at Centreville was completed and accepted by the said county commissioners of said county, and by them taken possession of, and on said date they consented to be entered their approval and acceptance of the deed of said William Sumner of May 18th, 1819, in the record of their proceedings of said date in the following words, to wit: ' William Sumner produced a deed for the public square in the town of Centreville, given by said Sumner and wife to and for the use of Wayne county, which deed was recorded in Book B, page 140, which deed was approved and accepted by the board;' that said real estate, so conveyed by the said Sumner and wife to said county commissioners, was thenceforward continuously used by said county for the purpose of a public square until the year 1873, at which date the county-seat was removed from said town of Centreville to the city of Richmond; that on the 7th day of March, 1874, the commissioners of said county, for a valuable consideration, sold and conveyed the west half of the same to one Sabra Jones, which deed was recorded in the recorder's office of Wayne county, Indiana, in deed record 59, page 480, and, on the 15th day of June, 1874, for a valuable consideration, they sold and conveyed the east half of the real estate to the said Sabra Jones,

which deed was recorded in the recorder's office of Wayne county, Indiana, in deed record 59, page 478; that said Sabra Jones took possession of said real estate on said dates, respectively, and that after various transfers by deeds duly executed and recorded, the following part of the real estate included in the land conveyed by said William Sumner to the said county commissioners, by deed of May 18th, 1819, was conveyed, on the 4th day of March, 1884, to defendant, William J. Darnell, who now holds possession of the same; that said deed was duly recorded in the recorder's office of said Wayne county, Indiana, in deed record No. 80, at page 121; that, prior to the commencement of this suit, the plaintiffs demanded of the defendant the possession of the same; and as a conclusion of law on the foregoing finding of facts the court finds for the defendant."

Proper exceptions were taken to the foregoing conclusions of law by the plaintiffs, and this presents for our consideration the question discussed by counsel in their elaborate briefs.

The conclusions of law deduced by the court from the special findings are assailed upon several different grounds, one of which is the claim that inasmuch as the deed was to " Thomas J. Worman, Enos Grave and Beah Butler, commissioners of Wayne county, and their successors in office, for the use of said county of Wayne," it gave to the commissioners the legal title, to hold as trustees, and limited the county to the mere *use* of the premises, and that by the removal of the county-seat the use was lost and forfeited, and the title vested *eo instanti* in the grantor or his heirs.

As we construe the grant, it was in legal effect and contemplation a conveyance to the county. Nothing in the language used indicates a design on the part of the grantor to vest the legal title in the commissioners, and their successors, as individuals to act as trustees, rather than as the agents of the county, or to impose upon them any duties or obligations other than those required of them as public offi-

cers. The statute in force at that time did not, as does the present one, designate the corporate name and style to be assumed by boards of commissioners (act approved December 17, 1816), and the form used in this deed was, at that time, commonly used in conveying property to corporations and *quasi* corporations in this State. It is significant, also, that the entry made upon the county records by the board of commissioners, in accepting the deed, was for a deed " *to* and for the use of Wayne county." See, also, *Carder* v. *Board, etc.,* 16 Ohio St. 353 ; *Hayward* v. *Davidson,* 41 Ind. 212.

Another position taken by the appellants is stated in their brief as follows :

" But this is not all we rely upon. The *total failure* of the consideration of the Sumner deed itself worked a loss of the county's claim and gave to the Sumner heirs the right to assert their title to the square, independent of the condition subsequent."

No authority is cited in support of this position, and we know of none that will sustain it. The duration or stability of the title to land does not ordinarily depend upon the certainty or stability of the consideration paid for it. But, independently of the legal question involved, the finding informs us that the county-seat remained at Centreville from the 1st day of August, 1817, until the year 1873, long after the grantor had removed from the county. We may reasonably suppose that, if the location of the county-seat at Centreville was of advantage to the grantor, he must have received some of the benefits during the half century it remained there, and that consequently there was not an entire failure of consideration. *Hunt* v. *Beeson,* 18 Ind. 380 ; *Jeffersonville, etc., R. R. Co.* v. *Barbour,* 89 Ind. 375.

The remaining, and principal, contention of the appellants is, that the conveyance of the land to, or for, the use of the county was conditioned on the seat of justice of Wayne

county remaining permanently at Centreville, and that its removal to Richmond caused the land to revert to the appellants, as the heirs of the grantor.

The rule of strict construction applicable to conditions subsequent, usually expressed in the words, " Conditions subsequent are not favored in law, and are construed strictly," is elementary, and does not require the citation of authorities.,

A condition subsequent that will defeat an estate created by a deed must be fairly expressed in the deed itself. The words used must create the condition. The court will not supply it, if the parties fail to express it. The rule is stated in 2 Dev. Deeds, as follows : " Section 976. Parol Condition.—Aside from the question of a reformation of a deed in cases where clauses have been omitted by mistake, it is certain that in an action to recover property conveyed by deed on the ground that a condition on which it was made has not been performed, the deed must speak for itself, and a condition can not be engrafted upon a deed absolute in form by parol evidence. The engrafting of a contemporaneous condition on a deed will in a proper action be allowed only on clear evidence of fraud, accident, or mistake."

A condition may be created by any words which show clear, unmistakable, intention on the part of a grantor to create an estate on condition, regard being had to the whole of the deed in which they occur. The word " condition " need not be used, but words importing a condition must be used, or plainly inferred from the instrument and the existing facts. Tiedeman Real Property, section 272; *Larabee* v. *Carleton,* 53 Maine, 211 ; *Rawson* v. *Inhabitants, etc.,* 7 Allen, 125 ; *Packard* v. *Ames,* 16 Gray, 327 ; *Episcopal, etc.,* v. *Appleton,* 117 Mass. 326 ; *Paschall* v. *Passmore,* 15 Penn. St. 295 ; *Wier* v. *Simmons,* 55 Wis. 637 ; *Raley* v. *County of Umatilla,* 15 Ore. 172 ; 2 Wash. Real Prop. (5th ed.) 2.

It appears from the finding, *supra,* that in the year 1816, the General Assembly passed an act fixing the seat of justice

for Wayne county permanently at Centreville from and after the 1st day of August, 1817; and that pursuant to the act, on that day, it was removed to Centreville; that afterward, on the 18th day of May, 1819, the lands in controversy were conveyed, by a general warranty deed, to the commissioners "for and in consideration of the seat of justice having been permanently established in the town of Centerville, within and for said county * * * for the use of said county of Wayne."

No other words from which any condition, limitation or right of re-entry by the grantor or his heirs are expressed in the conveyance, or in the subsequent entry made by the board of commissioners accepting the deed.

The cases cited by appellants' attorneys, and principally relied upon to show that this deed was conditioned on the seat of justice remaining at Centreville, will be examined in their order. The first one is *Stanley* v. *Colt*, 5 Wall. 119 (163). This was an action to recover for breach of condition a tract of land devised by the plaintiff's ancestor to an ecclesiastical society in which the property was devised to the society "'to be and remain to the use and benefit of said Second or South Society and their successors forever.' Then comes the condition or limitation upon the devise: '*Provided*, That said real estate be not ever hereafter sold or disposed of, but the same be leased or let,'" etc.

The court held that there was not a condition subsequent, using these words: "Our conclusion is, that the construction urged by the plaintiffs, of the will, importing a condition, a breach of which forfeits the devise, is not well founded."

The next case cited is *Hunt* v. *Beeson, supra*. In this case a lot was donated by the proprietor of a town for a "tan-yard," and was used as such from 1834 to 1858. The court held that it was donated upon a condition subsequent, the condition evidently being the erection of a tan-yard on the lot, and not the perpetual maintenance of the same, for

the court held that the condition was fully performed, and that the property did not revert upon its subsequent sale and appropriation to other purposes.

The case of *Indianapolis, etc., R. W. Co.* v. *Hood,* 66 Ind. 580, was a conveyance of some lots to the company " for a site for the depot of said railroad at Peru, * * * to have and to hold the premises * * * *for the purposes aforesaid.*" The statement of the use and condition was much stronger than is contained in the deed under consideration, and it does not support the position of the appellants. We do not feel called upon to extend the rule in favor of conditions subsequent beyond that indicated in this case.

The case of *Scott* v. *Stipe,* 12 Ind. 74, is not well reported, but as explained in *Scantlin* v. *Garvin,* 46 Ind. 275, does not sustain the appellants' contention, for it is said that the grant was upon condition that a church should be erected on the lot, and that it should " forever thereafter be used as a house of worship." Also, see *Cook* v. *Leggett,* 88 Ind. 211.

The case of *Warren* v. *Mayor, etc.,* 22 Iowa, 351, was a suit by the grantor who dedicated land for a "public square," to enjoin the city from leasing or selling the same. The case is not in point.

In *Henderson* v. *Hunter,* 59 Pa. St. 335, the condition expressed in the grant to a church was " so long as they use it for that purpose, and no longer, and then to return back to the original owner."

We are unable to find that any of the cases cited by appellants sustains their theory of this case.

In *Heaston* v. *Board, etc.,* 20 Ind. 398, the conveyance was to " the board of trustees of the County Seminary of Randolph county, and their successors in office forever, to have and to hold the premises aforesaid, with all the appurtenances, to the only proper use, benefit and behoof of said ' board of trustees for the use of said seminary forever.' " It was claimed that this created a condition subsequent, and

that the premises having ceased to be used as a seminary, the grantor was to recover the land. The court held that the corporation received an unconditional title, which was not defeated by the alleged failure to use the premises for the purposes of a seminary, or by using it for other purposes; that there was nothing in the deed that imported a condition, and that if the grantor intended that the property conveyed should only be used for a seminary edifice, or, in case it should be used otherwise, that the estate should be forfeited and revert, the condition should have been expressed or fairly implied.

In *Seebold* v. *Shitler*, 34 Pa. St. 133, land upon which a court-house and jail had been erected was conveyed to the commissioners by name, and their successors in office, " in trust for the use of the said county, in fee simple." The county was subsequently divided, the seat of justice removed, and trustees appointed to sell the lots. Held, that there was no reverter.

In *Adams* v. *County, etc.*, 11 Ill. 336, a land owner proposed that if the county-seat should be located at Pottsville he would give land for a court-house and other county purposes. The proposition was accepted, and the General Assembly passed " an act to locate permanently the seat of justice of Logan county," and it was located at Postville. Subsequently the county-seat was removed. It was held that the grantor was without remedy. The suit was to recover the money rather than land, but it was held that the deed was unconditional.

In *Harris* v. *Shaw*, 13 Ill. 456, land was conveyed to commissioners, by name, and their successors in office, for the use of a county forever, in consideration of one dollar, and that the county-seat had been located on the premises. The county-seat was afterwards removed, and the grantor sued to recover the land. It was held that there was no condition and that he could not recover.

The citation of authorities to this effect might be greatly

extended, but we will only refer to the following : *Raley* v. *County of Umatilla, supra ; City of Portland* v. *Terwilliger,* 16 Ore. 465 ; *Coffin* v. *City of Portland,* 16 Ore. 77 ; *First M. E. Church* v. *Old Columbia, etc., Co.,* 103 Pa. St. 608 ; *Paschall* v. *Passmore,* 15 Pa. St. 307 ; *Rawson* v. *Inhabitants, etc.,* 7 Allen, 125 ; *Packard* v. *Ames,* 16 Gray, 327 ; *Crane* v. *Inhabitants, etc.,* 135 Mass. 147 ; *Sohier* v. *Trinity Church,* 109 Mass. 1 ; *Board, etc.,* v. *Patterson,* 56 Ill. 111 ; *Lawe* v. *Hyde,* 39 Wis. 345 ; *Wier* v. *Simmons,* 55 Wis. 637 ; *Brown* v. *Caldwell,* 23 W. Va. 187 ; *Southard* v. *Central R. R. Co.,* 2 Dutch. 13 ; *Barrie* v. *Smith,* 47 Mich. 130 ; *Gage* v. *School District,* 64 N. H. 232 ; *Page* v. *Palmer,* 48 N. H. 385 ; *Morrill* v. *Wabash, etc., R. W. Co.,* 96 Mo. 174 ; *Thornton* v. *Trammell,* 39 Ga. 202.

It is questionable whether the appellants would be entitled to a recovery if the deed contained a condition subsequent.

It appears from the finding that the county-seat remained at Centreville from 1817 to 1873, a period of fifty-six years, and that this suit was brought more than seventy years after the location of the seat of justice at Centreville. It may fairly be presumed that the grantor, at the time he executed the deed to the commissioners, owned other property, the value of which he expected would be enhanced by the location of the county-seat, or that he had other interests to be subserved thereby. If so, we may also infer that he received, during his lifetime and while a resident of Wayne county, the substantial benefit of his donation.

In *Hunt* v. *Beeson,* 18 Ind. 380, it was held that the maintenance of a tan-yard for the period of twenty-four years was a substantial compliance with the condition contained in the conveyance.

In *Mead* v. *Ballard,* 7 Wal. 290, a conveyance upon a condition that an institute " shall be permanently located upon said lands," was complied with by the location of the insti-

tution thereon August 9th, 1848, and its remaining there until 1857.

In *Jeffersonville, etc., R. R. Co.* v. *Barbour*, 89 Ind. 375, the use, for thirty-three years, of lands granted " expressly for the use and purpose of depot grounds," and providing that if not used for that purpose it should revert to the grantors, was held to be a performance of the conditions, so as to prevent a forfeiture.

We find no error in the record.

Judgment affirmed.

Filed April 3, 1891.